UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 03-14068-CR-GRAHAM/LYNCH

UNITED STATES OF AMERICA,

        Plaintiff,

-vs-

JOSEPH POIGNANT,

        Defendant.
_____/

## MEMORANDUM OF LAW REGARDING TERM OF SUPERVISED RELEASE IN PROTECT ACT CASES

The United States files this memorandum of law regarding the term of supervised release in PROTECT Act cases such as the one before the Court, and states the following:

### Factual Background

This case arose upon action of Detective Neil Spector of the St. Lucie County Sheriff's Office, in his undercover role as a father with small children engaging in communication on the internet with persons professing their interest in sexual activity with children; Det. Spector identified the chat room as "Dad-to-Dad Chat." The defendant's profile as MRGOLUCKY38 stated the following:

> Marital Status: single and looking for g and b
> Hobbies & Interests: have to lovley [sic] kids 11b and 10g

Det. Spector assumed the role of a father with children available for sexual activity with other adults,

and responded to the defendant's instant message, at first simply asking the age of the defendant's children. Government's Exhibit 1, p.1 . When asked his interests, the defendant answered,"[B]eing with girls and boys...like younger." *Ibid.* He stated he preferred those "10 and up." When asked if he had real time experience with young, the defendant answered, "not really just my dau [daughter]." Ex. 1, p.1. The defendant indicated that he wanted to "have sex with you all" that night, with the undercover "dad" and that dad's two children. Ex. 1, p.2.

In a subsequent telephone call, the defendant stated that his daughter was in Arizona and that he had had oral sex with her; the defendant also indicated that he wanted to have sex with the undercover "dad's" daughter. Government's Exhibit 2. A meeting was arranged, and the defendant brought a teddy bear, condoms and a digital camera to an agreed hotel. May 27, 2004, Transcript of Sentencing Hearing, pp. 23-24. His arrest followed.

In the following days, Det. Spector learned that the defendant had been online on previous occasions, during which he had solicited an individual he had thought was another father willing to offer his children for sexual use. Government's Exhibit 3, setting forth contacts with a Delray Beach officer, contains the electronic communications in which the defendant described how he has used his daughter in the bath to perform sexual activity (p.1) and how he has engaged his own son in sexual activity (p.2); he indicates that he wants to see his children [mentioned in the context of future sexual activity (pp. 4 and 10)]. The defendant had also communicated by computer with a person he thought was a 14-year-old girl. Government's Exhibit 3A. He explained in explicit terms the sexual activity he wanted to engage her in (Bates-stamped pages 0038-40) and attempted to entice her to leave her family that evening (p. 0038). The last page of Ex. 3A details yet another previous contact by the defendant with an undercover officer, in which the defendant expresses a desire to

have sex with the undercover's young daughter.

The defendant's bragging about sexual activity with his own daughter gave due cause for alarm. Subsequent to the defendant's arrest, the defendant's daughter was interviewed and indicated that she had been touched all over her body, Tr. 53, including her upper and lower abdomen, Tr. 54; she indicated that she did not want to visit with her father because he did nasty things in the bathroom, Tr. 56-57. Counselor Wendy Dutton felt that the defendant's daughter, a nine-year-old, was uncomfortable with the types of behaviors her father was doing, which led her to believe that more than just a hygiene issue was involved. Tr. 59. Her concerns were confirmed by communication from school psychologist Dr. Astrid Heathcoat, who related that the little girl had disclosed genital fondling by her father. Tr.59. The little girl had been asked on April 5, 2004, by the school psychologist about summer vacation; she had spontaneously stated that her father had put a blanket around them and fondled her genitals. Tr. 59-60.

The child's mother also testified about this disclosure, Tr. 42, and school officials' concerns about inappropriate kissing between the defendant's daughter and son. Tr. 43. The mother also recalled her daughter's cutting off hair and eyelashes before a planned trip in 2002 to see her father. Tr. 35-36. The daughter just cried when her mother asked her why she had disfigured herself. Tr. 36. Wendy Dutton recalled that the defendant's daughter had said her father claimed she had hair and eyes like her mother, and was pretty. Tr. 55. Ms. Dutton also noted that it is not unusual for children who have been sexually abused to make themselves unattractive to avoid abuse. Tr. 55. The little girl's mother related that eventually her daughter was able to tell her that her father had touched her upper body and lower "belly abdomen." Tr. 41. The child's mother also recalled that her daughter had adamantly refused to visit her father in the summer of 2003, Tr. 39-40; the trip did

3

not occur because of the defendant's lack of funds.

## Procedural History

The defendant has entered a plea of guilty to Count One of the indictment. The Court has heard testimony regarding the facts pertinent to sentencing and has requested that the parties provide legal argument and authority for determination of the only issue in question, the appropriate term of supervised release.

## Applicable Provisions of the U.S. Sentencing Guidelines

**I. Section 5D1.2(c) is the controlling guideline section for the determination of supervised release with regard to violations of 18 U.S.C. §2422.**

Section 1B1.1 of the U. S. Sentencing Guidelines (hereinafter "Guidelines") sets forth in plain language the order in which the Guidelines are to be applied. Subsections (a), (b), and (c) of that section direct that the Court determine (a) the offense conduct or guideline section; (b) the base offense level with any specific offense characteristics, cross references, and any special instructions in Chapter Two; and (c) any applicable victim, role or obstruction adjustments under Chapter Three. In this case before the Court, the Court would look next at the defendant's acceptance of responsibility [subsection (e) of §1B1.1, referring to Part E of Chapter Three], and then the defendant's criminal history score [subsection (f) of §1B1.1, referring to Part B of Chapter Four]. Then the Court would match the offense level and criminal history [subsection (g) of §1B1.1.] and only then apply Parts B through G of Chapter Five to assess imprisonment, supervised release, fines and restitution [see subsection (h) of §1B1.1].

Parts H and K of Chapter Five of the Guideline only apply if there are specific applicable offender characteristics [*e.g.,* Age, Education and Vocational Skills, Mental and Emotional

Conditions, Physical Condition (including drug or alcohol dependence or abuse) or Gambling Addiction, Employment Record, and Family Ties and Responsibilities, etc.] or "departures." A "departure" is defined essentially as imposition of a sentence outside the applicable guideline range or otherwise different from the guideline sentence. §1B1.1, Application Note 1(E). Thus, if a sentence falls within a guideline range, there is no departure.

In the case before the Court, there is no dispute as to the range of imprisonment or the defendant's criminal history as determined under the Guidelines. The only dispute comes with the application of §5D1.2 to the term of supervised release to be imposed, and the subsequent question of whether the provisions of §5K2.0 ("Departures") apply at all.

Counsel for the defense and the U.S. Probation Office have chosen to ignore the clear applicability of §5D1.2(c), which states the following:

> (Policy Statement) If the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended.

It has been falsely assumed that anything labeled as a "Policy Statement" does not have the binding authority of law. This assumption is incorrect and improperly extends the holding of *United States v. Hofierka*, 83 F.3d 357 (11th Cir.1996), *cert. denied*, 519 U.S.1071 (1997), which reaffirmed that the Policy Statements in Chapter Seven of the Sentencing Guidelines, which provide ranges of imprisonment that a court may follow <u>when revoking probation or supervised release (emphasis added)</u>, are merely advisory in nature.

Only the Policy Statements in Chapter Seven of the Guidelines are advisory. In *Williams v. United States*, 503 U.S. 193, 201, the United States Supreme Court had held that the policy statements of the Sentencing Commission (which did not involve Chapter Seven's provisions

5

regarding the revocation of supervised release or probation) had the binding effect of law in federal courts. In *Stinson v. United States*, 508 U.S. 36, 36-38 (1993), the commentary found in the Sentencing Guidelines was found to be equally binding on federal courts, so long as such commentary did not offend the Constitution or a federal statute and was not plainly erroneous or inconsistent with a Guideline.

Thus, the Policy Statement found in §5D1.2(c) is binding on the courts. In effect, it gives the courts discretion to impose a term of supervised release of up to life. Since a term of up to life is authorized as the guideline range for supervised release, there is no need to apply §5K2.0 (also a Policy Statement), for departures. There is no departure.

This analysis is consistent with the advice given to the undersigned Assistant United States Attorney by Kaelin Culbreth, one of the "Help Line" counselors with the U.S. Sentencing Commission (the Help Line is telephone (202) 502-4545).[1] While noting that there is no official position yet promulgated with regard to determination of a term of supervised release for PROTECT Act offenses (which include the offense with which the defendant is charged), Mr. Culbreth pointed out that the primary controlling section is currently 5D1.2(c); he noted that the sentencing court had considerable room for discretion and that a court would have to determine the appropriate term of supervised release. This view is also consistent with the legislative history of the PROTECT Act, which amended, among other items, Title 18, United States Code, Section 3583 (k) to provide that the authorized term of supervised release for any offense under section 2422 is any term of years or life.

A portion of the legislative history can also be found at 2003 WL 1856881, *et seq.*, which

---

[1] Help Line advice is not binding upon the Sentencing Commission.

6

may also be cited as 149 Cong. Rec. S5113-01. Senator Orrin Hatch, in proffering the Conference Report, noted, at S5115 of the Congressional Record, that the legislation would:

> No. 1, provide a judge with the discretion to extend the term for supervision of released sex offenders up to a maximum of life...
> ..........................................................................................................
> No. 13, reforms (sic) sentencing for criminals convicted of crimes against children and sex crimes.

Senator Hatch also noted that the compromise proposal which was part of the conference report would limit but not prevent, downward departures only to enumerated factors for crimes against children and sex offenses. Id. at S5115. It should be noted that the departures discussed in the Congressional Record deal with an active sentence of incarceration. There is nothing in that record that indicates that the senators or congressmen thought of departure language in any terms but those regarding a sentence of incarceration, and the comments of the majority of legislators decried the steadily increasing numbers of downward departures shortening prison sentences in sex crimes cases. Id. at S5115-S5116. As part of the legislation, the Sentencing Commission was directed to review the grounds of downward departure and to promulgate appropriate amendments to the guidelines, policy statements, and official commentary, pursuant to Title 28, United States Code, Section 994. See Pub.L. 108-21, Title IV, §401(b), (g), (j)(1) to ((4), and (m), Apr. 30, 2003, 117 Stat. 668 to 675. - Child crimes and sexual offenses, child pornography, downward departures, and acceptance of responsibility.

The Sentencing Commission's response to this congressional directive may be found in Amendment 649 to the United States Sentencing Guidelines, which may be found in Appendix C, Volume II, of the Guidelines. Besides increasing penalties for crimes involving sexual acts or depictions with minors, the amendment clarifies new limits on downward departures in child crimes

and sexual offenses. The commentary to §5K2.0 acknowledges near its end that the policy statement, including its commentary, was substantially revised, effective October 27, 2003, in response to directives contained in the PROTECT Act, particularly the directive in section 401(m) of the Act to review grounds of downward departure and promulgate appropriate amendments to ensure that the incidence of downward departures was reduced. Nothing in the commentary to §5K2.0 or in the PROTECT Act's legislative history points to a congressional focus on the need for departure language specifically related to supervised release for child sex abuse offenses. The reason for this is plain: there is no need for departure in such a case since both the Act and the Guidelines [§5D1.2(c)] contemplate unfettered discretion in the sentencing court to impose a term of supervised release, up to life. As this is within the guideline range of §5D1.2(c), there is no departure.

**II. A sentencing court may preserve for appeal its alternative rationales of sentencing in child sex crimes cases .**

The undersigned Assistant United States Attorney has been unable to locate any reported federal cases dealing with the issue of determination of a term of supervised release in cases arising after the effective date of the PROTECT Act. [2] The only other such case in which the undersigned

---

[2] A senior trial attorney in the Child Exploitation and Obscenity Section of the Department of Justice in Washington, D.C., reported at least two cases in which life terms of supervised release were imposed: *United States v. Allen Dwayne Coates*, Case No. 2: 03-00176, Southern District of West Virginia, which involved a violation of 18 U.S.C. §2241 and *United States v. Larry N. Cole*, Case Nol H03 186(ss) in the Southern District of Texas, which involved the possession of child pornography. In *Coates*, according to the federal prosecutor assigned to the case , the court imposed a sentence of imprisonment at the lower end of the guideline range (25 years) but noted in imposing supervised release for life,that it would be a difficult matter if the defendant could ever be rehabilitated. In *Cole*, according to the prosecutor handling the case, the offender was only charged with possession of child pornography, for which he received a term of imprisonment of 76 months, but the judge, in imposing supervised release for life, noted the recurring nature of the charged conduct (two computers involved) and the need for the defendant to be monitored.

was involved, *United States v. L'Heureux*, Case No. 03-14029-CR-GRAHAM, involved the mailing of child pornography after an order over the internet, and involved no indication of past abuse of children either inside or outside the charged conduct; the case involved no solicitation or attempted solicitation of a minor. The term of supervised release (three years) was not at issue in that case, as the parties agreed on the propriety of that portion of the sentence. While there is no current case precedent for the precise facts in the case now before the Court, there is some precedent for addressing such cases when exact application of the guidelines is not known.

In *United States v. Hersh*, 297 F. 3d 1233 (11th Cir. 2002), *reh. and reh. en banc denied*, 52 Fed. Appx. 495, 2002 WL 31557462 (11th Cir. 2002) (TABLE, NO. 00-14592), *cert. denied*, 537 U.S. 1217 (2003), the sentencing court initially attempted to fashion a sentence by separately grouping certain trips abroad for the purpose of molesting young boys; the Court alternatively stated its sentence in terms of a ten-level upward departure in the sentence of imprisonment, based on a number of possible grounds, including Hersh's 20-year history of sexual predation and exploitation (stating that the guideline enhancement did not adequately reflect the seriousness of the sexual abuse or exploitation of minor young males), and the numerous minor males from the U.S., Honduras, Mexico, and the Dominican Republic, who were abused by Hersh even though the acts were not charged in the indictment. The court went on in its "alternative reasoning" to find another distinguishable factor, Hersh's preying on the young and unfortunate, children who were desperately poor and whose families needed the items that the defendant would furnish with his demands for sexual acts. In effect, the sentencing court found that the guidelines did not sufficiently reflect the vulnerability of the victims. Finally, the sentencing court noted further in its "alternative reasoning" that the grouping for the sentence of imprisonment was capped at four groups and that the resulting

disregard of a count in the indictment left the combined offense level at an inadequate level. While the Court of Appeals found that the initial grouping of separate trips abroad was legally incorrect on *ex post facto* principles, it upheld the sentence on the basis of the Court's alternative reasoning. See *Hersh*, 297 F. 3d 1233, 1250-54 (11th Cir. 2002).

It is important to remember that *Hersh* and virtually all other cases on departure will address departure in sentences of imprisonment. Until April 30, 2003, the term of supervised release in sex crimes cases was capped by statute at five years. Thus, these cases are not cases which focus upon supervised release.

While *Hersh* discussed vertical departure not requiring explicit explanations for the departure, it is possible to also view such matters in terms of "guided" departure. For example, U.S.S.G. §4A1.3 permits district courts to make upward departures if the Guidelines sentencing range does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes. This example is discussed in *United States v. Simmons*, 2004 WL 1005998 (11th Cir.2004), in which the Eleventh Circuit Court of Appeals noted that departures may be guided or unguided; a guided departure is one based upon a factor about an offense or a defendant that the Guidelines expressly discuss. *Id.* at *2. The determination of the adequacy of the criminal history score pursuant to §4A1.3 would be an encouraged factor and could be the basis for a guided departure. *Id.* at *4. (See also Footnote 3 of the court's opinion, which discusses Eleventh Circuit distinctions in the use of the terms "guided" and "unguided" departure.)

While it might be tempting and useful in some sense to view certain factors in the case before the Court in terms of inadequacy of criminal history (which does not reflect the abuse of the

10

defendant's own daughter and son or other internet attempts to seduce minors or solicit sexual acts with them) or likelihood of commission of other crimes (based on the recurring nature of the offense conduct), such an analogy is by no means necessary. It is also not dispositive in a case in which the sentence of imprisonment is not at issue and only the term of supervised release is involved. If the Court chooses to view §5D1.2(c) as a recitation of a favored factor for departure, the Court may simply note, that if its action is viewed as a departure, then the departure is based upon aggravating circumstances not adequately taken into account in the Guidelines, including the need for additional supervision for this defendant based upon his prior misconduct with this own children and the recurring nature of the offense conduct in other uncharged solicitations of minors.

The government has requested a term of supervised release, of twenty years. This falls in the middle of the possible time period which might be imposed for supervised release, based on the age of the defendant. It is reasonable to require a more extensive period of supervision in such a case where there is strong evidence of past misconduct by the defendant with his own children (Government's Exhibit 5 and May 27, 2004, Transcript of Sentencing Hearing, pp. 37-43; 53-60) and where there were repeated attempts by the defendant to solicit sex with minors in other venues. See, in particular, Government's Exhibit 3, in which the defendant bragged to another undercover officer about the past abuse of his son and daughter (pp. 1-2) and indicated his desire to involve his own children in sexual activity on their next visit (pp. 4, 10). Government's Exhibit 3A also details previous uncharged conduct in which the defendant solicited an individual he believed was a 14-year-old girl and tried to talk her into leaving her family that night (Bates-stamped pages 0038-39); Bates-stamped page 0048 details another internet communication by the defendant with a person the defendant believed was another father who wants to trade children with him for sex.

The term of supervised release requested by the government is a reasonable period and one necessary for the protection of the public, based upon the defendant's past and recurring unlawful conduct involving the sexual abuse or solicitation of children.

### Conclusion

The instructions in §1B1.1 of the Sentencing Guidelines should be followed *seriatim*. Application of these instructions, in order, would establish a guideline range of supervised release for the defendant, of up to life, pursuant to §5D1.2(c). The imposition of a term of years of supervised release is within the range contemplated by that guideline, and the application of the guideline for departure (5K2.0) is inappropriate; nevertheless, the Court may find it advisable to state its reasoning in the alternative as an upward departure, noting the aggravating circumstance of need for additional supervision as demonstrated by the defendant's recurring misconduct in the attempted solicitation of other minors and the sexual abuse of his children (particularly his daughter) which was touted by the defendant in his online activities.

The government respectfully requests that the Court impose a term of supervised release, of twenty years, to address the need for additional supervision of the defendant and to ensure the protection of the public.

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

*/s/ Debra J. Stuart*

DEBRA J. STUART
ASSISTANT UNITED STATES ATTORNEY
Court No. A5500061
505 South Second Street, Suite 200
Ft. Pierce, Florida 34950
Tel. No.: (772) 466-0899 / Fax: (772) 466-1020

## CERTIFICATE OF SERVICE

This motion was delivered this 10th[th] day of June, 2004, by facsimile transmission to counsel for the defendant, Dave Lee Brannon, Esquire, at fax no. (561) 833-0368, and by deposit in the U.S. Mail, postage prepaid, addressed to: Dave Lee Brannon, Esquire, 400 Australian Avenue, Suite 300, West Palm Beach, Florida 22401-5040.

*Debra J. Stuart*
DEBRA J. STUART
ASSISTANT UNITED STATES ATTORNEY