UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 03-14068-CR-GRAHAM/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOSEPH POIGNANT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON FINAL HEARING IN RESPECT TO THE PETITION ALLEGING VIOLATIONS OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard for a final hearing on the Petition Alleging Violations of Supervised Release (the "Petition") [D.E. 121], and this Court having conducted a hearing and received testimony and arguments of counsel on May 29, 2018, makes the following recommendations to the District Court:

    1.    Defendant's supervision began on March 21, 2008. He was sentenced to a period of sixty months in the Federal Bureau of Prisons after having been convicted of using a facility, a computer, and means of interstate commerce to persuade, induce, entice or coerce an individual under the age of 18 years to engage in sexual activity in violation of Title 18, United States Code, Section 2422(b). As part of the Defendant's supervised release, the District Court ordered Defendant to participate in sex offender treatment. The Defendant was placed in the REACH[1] Program at the Clinical & Forensic Institute as part of his condition of sex offender aftercare.

---

[1] REACH stands for Responsibility through Effort, Awareness, Self-Criticism and Honesty.

2.	On January 6, 2011, Probation filed a petition alleging that Defendant violated his supervised release conditions by (1) possessing or using a computer with internet access and (2) failing to participate in sex offender treatment based on Defendant's unsuccessful discharge from the REACH sex offender program. [D.E. 59]. Defendant was found guilty of both violations by a preponderance of the evidence. [D.E. 72]. Defendant was sentenced to seven months' incarceration to be followed by seven years of supervised release. [D.E. 75, 76].

3.	On November 14, 2015, Probation filed a second petition alleging that Defendant violated conditions of supervised release by (1) possessing a tablet computer with internet access, (2) possessing and/or producing visual depictions of adults engaged in sexually explicit conduct, and (3) failing to be truthful with his probation officer. Defendant admitted these violations. Defendant was sentenced to eight months' incarceration to be followed by twenty years of supervised release. [D.E. 105, 106].

4.	On April 30, 2018, Probation filed the pending Petition alleging the following violation of supervised release:

**Violation Number 1**	**Violation of Special Condition**, by failing to participate in a sex offender treatment program. On or about April 23, 2018, the defendant was unsuccessfully discharged by REACH, Clinical & Forensic Institute, as evidenced by the letter of unsuccessful discharge from treatment dated April 23, 2018.

5.	This Court held a final hearing on the Petition on May 29, 2018. The sole witness called by the government was Dr. Holly Goller, a licensed psychologist at the Clinical & Forensic Institute who specializes in the treatment of sex offenders. Dr. Goller received her doctorate degree in psychology in 2014 and her license to practice in 2016. Dr. Goller began treating Defendant in 2012 as a student practitioner working under the supervision of Dr. Lori

Butts. She has treated Defendant continually since then except during his periods of incarceration and when she left to complete her pre-doctoral work in 2013/14.

6. Dr. Goller testified that she resumed treatment with Defendant in September 2016 after he was released from his most recent period of incarceration. Defendant was placed on an Intensive Therapy Plan (ITP), which is a treatment plan specifically tailored to the client's individualized needs. Defendant's ITP required him to attend two group sessions per week and two individual sessions per month. This plan was more intensive than the usual treatment plan which generally required one weekly group meeting and one monthly individual session. Defendant's plan required twice as many sessions so he could work intensively on his urge control and anger management issues, cognitive distortions, and management of factors that would put him at risk of re-offending.

7. According to Dr. Goller, Defendant began exhibiting deceptive and risky behaviors in January 2017 when she and Defendant's probation officer determined that Defendant was lying to them about having internet access. At first Defendant told them his girlfriend left her computer at his house but there was no internet access. He then admitted that the girlfriend also left her portable hotspot device (which provides internet access) but he claimed he did not know the password so could not access the internet. He finally admitted that he had set up the hotspot device for his girlfriend, and had retained the password at that time. Defendant also violated the terms of his ITP by going to beaches and to bars – places Defendant had identified in therapy as being "risky" for him because they provide access to desired victims.[2] Dr. Goller also reported that Defendant failed a polygraph on April 30, 2017 by exhibiting

---

[2] Dr. Goller testified that Defendant said bars were "risky" because they provided access to intoxicated women who may feel insecure about themselves or be recently out of relationships. Other risky places for him include nude beaches and campgrounds.

signs of deception when asked whether he had access to pornography or contact with anyone under 18. Dr. Goller explained that truthfulness is an important indicator of compliance when working with sex offenders. In her opinion, Defendant's failure to be forthcoming and his return to risky locations suggested a lack of compliance with treatment and re-engagement in his offense cycle. Dr. Goller counseled Defendant about his increasing levels of risk at his three month progress reviews.

8. Another goal of Defendant's therapy was to help Defendant manage his anger. Dr. Goller testified that Defendant's ITP agreement included a three part plan for dealing with anger. First, Defendant was to take five minutes to calm down. Second, Defendant's group therapy peers would give him feedback on how his behavior affected them to help Defendant recognize the consequences of his behavior. Third, Dr. Goller would lead Defendant through a guided therapeutic process to help him understand his feelings and thoughts. Defendant agreed in his ITP to utilize this three part plan, and communicated the plan to his peers during a subsequent group session.

9. On April 16, 2018, Defendant became angry and lost his temper during a group therapy session. The conflict started when Defendant raised his hand to say he wanted to share his presentation but could not do so because there was not enough time left in the session. Defendant was upset because another participant took up more time than Defendant thought that person was entitled to, Dr. Goller explained. Dr. Goller told Defendant that there was enough time left in the session for him to present, and Defendant should go ahead and share. Defendant became angry, raising his voice, turning red, and refusing to respond to Dr. Goller's efforts to redirect him. After ten to fifteen minutes of trying to get Defendant to use his anger management strategies, Dr. Goller asked him to leave. Defendant became verbally aggressive, stating, "This

is fucking bullshit!" and mumbling "fuck this" under his breath as he walked out the door. Defendant sat in his car in the parking lot instead of leaving the premises. Dr. Goller testified that all REACH participants – including Defendant—are told verbally as well as in the program handbook that they must be respectful to others during treatment. Failing to do so is a violation of one's ITP. Participants are also told that it is against the rules for them to linger on the premises after therapy. Despite this, when Dr. Goller went to the parking lot and told Defendant to leave, he rolled up his window. Dr. Goller knocked on the window and said she would call the police if he did not leave. Defendant complied at that point and drove away.

10. On cross-examination, Dr. Goller acknowledged that going to the beach or to a bar is not illegal. She also admitted that Defendant never self-reported accessing pornography, using a computer for inappropriate purposes, or engaging in any illegal activity. Dr. Goller is aware that April 2018 was the two-year anniversary of Defendant's mother's death by suicide. She knew about Defendant's bereavement issues due to the loss of his mother. She knew that Defendant claimed he was sexually abused as a child. She also knew that Defendant's psychiatrist had prescribed an antidepressant to Defendant. Nonetheless, Dr. Goller's professional opinion is that Defendant is not depressed or anxious and does not suffer from post-traumatic stress disorder (PTSD). Dr. Goller testified that Defendant was discharged for a number of reasons, including his angry outburst on April 16, 2018. Specifically, she said Defendant was discharged because he was re-engaging in risky behaviors and risky situations, beginning to engage in his offense cycle, not responding to redirection or therapeutic intervention, and ignoring the rules in the handbook.

11. The parties agreed to the Court taking judicial notice that Defendant's mother committed suicide in April 2016. Defense counsel argued that the two year anniversary of this

tragedy contributed to Defendant's emotional state during the group therapy session on April 16, 2018.

## ANALYSIS

12. After serving a sentence of sixty months in the Federal Bureau of Prisons for his underlying conviction, and two more sentences of incarceration for violating his supervised release, Defendant is well aware that he has to adhere to certain conditions that include successful participation in sex offender treatment. Indeed, Defendant previously violated this condition when he was discharged from the REACH program before for failing to be honest about his internet activity. As a result, Defendant well knew that failing to be forthcoming and/or follow the requirements of the REACH program could send him back to prison.

13. Counsel for the Defendant argues that the anniversary of his mother's suicide provides context for Defendant's uncontrolled behavior on April 16, 2018 and that Defendant's outburst should not be the sole measure of whether Defendant was "participating" in treatment. That may be so. But Defendant's disrespectful conduct on April 16th was not the sole reason he was discharged from treatment; it was merely the last in a series of problems with his participation in the REACH program. The evidence shows that Dr. Goller tried to work with Defendant intensively for over a year before the Petition was filed, offering him all of the services at her disposal, including extra individual sessions, extra group sessions and homework assignments. Dr. Goller and Defendant's probation officer met monthly to compare notes about Defendant's progress. They discovered during one of these meetings that Defendant had been untruthful with one or both of them about his access to the internet. They also discovered discrepancies about whether Defendant was complying with his ITP or going to places that were risky locations for him. Defendant also failed a polygraph. Defendant's ITP was updated in May

2017 because he continued to self-report risky behaviors. Defendant was counseled about the consequences at his three month reviews. Defendant was advised verbally and in the handbook about the need to be respectful to others. Defendant was provided with a plan for constructively dealing with anger, which he clearly understood since he was able to communicate the plan to his peers. Defendant's loss of temper during the group session on April 16th appears to be the culmination of difficulties he was having in the REACH program. Defendant's therapist indicates that he was discharged for disrespectful behavior on April 16th, as well as for re-engaging in risky behaviors, showing deception and failing to respond to therapeutic intervention.

14. This case is not one in which Defendant has complied with his treatment plan in all respects other than one angry outburst during a difficult time. Instead, Defendant has violated his treatment agreement by returning to places that put him at risk of reoffending. The issue is not whether going to beaches or to bars is legal. The issue is whether Defendant is putting himself in situations that can lead to a relapse in behavior. Defendant's decision to go places that can lead to relapse is viewed by the Defendant's therapist as being a link which could lead the Defendant back to the same criminal conduct which resulted in his underlying conviction in this case. Defendant's conditions of supervised release require him to "participate in a sex offender treatment program to include psychological testing and polygraph examination." "[T]he requirement of participation, meaning 'to partake, as to participate in a discussion,' requires more than just passive attendance at the counseling sessions or mere submission to treatment." *Heard v. Crosby*, 2005 WL 1712306, *3 (M.D. Fla. 2005) (*quoting* Black's Law Dictionary 1007 (5th Edition 1979). Participation means the Defendant is complying with the rules of the REACH program, which prohibit engaging in activities that can lead to relapse, being untruthful

or deceptive to therapist and/or others, and being disrespectful during therapy sessions. Defendant failed to comply with these requirements and therefore has failed to "participate in sex offender treatment."

15. This Court finds that the government has sustained its burden by a preponderance of the evidence in establishing that the Defendant has violated his supervised release in respect to Violation Number 1. **This Court notes that a final hearing is set for Thursday, June 28, 2018 at 11:30 AM before District Judge Donald L. Graham at the United States District Courthouse, 101 South U.S. 1, Courtroom 4008, Fort Pierce, Florida 34950.**

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violation Number 1. The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Donald L. Graham, the United States District Judge assigned to this case. Pursuant to Federal Rules of Criminal Procedure, Rule 59(b)(2), failure to file objections timely waives a party's right to review and bars the parties from attacking on appeal any legal rulings and factual findings contained herein.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida this 6th day of June, 2018 at Fort Pierce.

SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE